IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 20-22556-civ-COOKE/GOODMAN

**DEBORAH ENGLE**

    Plaintiff,

vs.

**ROYAL BAHAMIAN ASSOCIATION, INC.**
a Florida Not For Profit Corporation;
**RENOVATIONS PROPERTY MANAGEMENT, LLC,**
a Florida limited liability company;
**PATRICIA GILLILAND, individual**

    Defendant(s).
_____/

### PLAINTIFF'S FIRST AMENDED COMPLAINT
### Per Court's Endorsed Order [DE 51]

Plaintiff, DEBORAH ENGLE (hereinafter "Plaintiff") files this Amended Complaint against the Defendants ROYAL BAHAMIAN ASSOCIATION, INC., a Florida corporation (hereinafter "**RBA**"); RENOVATIONS PROPERTY MANAGEMENT, LLC, a Florida limited liability company (hereinafter "**RPM**"), PATRICIA GILLILAND, an individual (hereinafter "**GILLILAND**") in support thereof states the following:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times pertinent to this action was, a resident of Miami-Dade County, Florida and is a disabled person as defined by 42 U.S.C. § 3602(h). Plaintiff resides and owns possessory and title interest in a condominium unit 411W in RBA condominium together with an undivided portion interest in all common elements of RBA condominium.

1

2. RBA is a condominium association which governs RBA's application of laws, rules, and regulations on Plaintiff, and at all times pertinent to this action is and was a Florida non-profit corporation with principal place of business in Miami-Dade County, Florida.

3. RPM is a property management company retained by RBA to assist RBA in the management of RBA's business affairs, including but not limited to participation in the management of Plaintiff's disability affairs herein, and at all times pertinent to this action is and was a Florida limited liability company with principal place of business in Miami-Dade County, Florida.

4. GILLILAND is currently a Florida licensed and trained community association manager ("LCAM") who works on-site at RBA as a property manager. GILLILAND is employed by RPM, to assist RPM and RBA in the management of RBA's business affairs, including but not limited to participation in the management of Plaintiff's disability affairs herein, and at all times pertinent to this action is and was an individual working at RBA condominium property in Miami-Dade County, Florida. All events pertinent to this action that GILLILAND was involved in and that gave rise to this action took place in Miami-Dade County, Florida.

5. This Court has jurisdiction over the subject matters under 11 U.S.C. §1331; 42 U.S.C. 3613; due to the fact this action is brought under Fair Housing Act violation, 42 U.S.C. § 3601 and more specifically 42 U.S.C. §3604 and 42 U.S.C. §3617.

6. Under 28 U.S.C. § 1391(b) venue is proper in Southern District of Florida, Miami Division as all Defendants are either residents of Miami-Dade County, FL and/or and all relevant events took place within its judicial district.

7. The court has jurisdiction over all Defendants stated above.

## BACKGROUND AND GENERAL ALLEGATIONS

8. Plaintiff, Deborah Engle, has been battling stage four/late-stage breast cancer that metastasized to her bones over nine years. She has undergone multiple surgeries and multiple treatments in both soft tissue/muscle and bone. The initial surgeries (double mastectomy and then total reconstruction), caused her debilitating upper body weakness

and painful scarring with limitations in range of motion. Aggressive chemotherapy, both intravenously and oral, caused and still cause an unpredictable weakness, low energy, continuous debilitating pain, weak immune deficiencies, and other challenges.

9. Three years after Plaintiff's initial diagnosis, the Breast Cancer spread (metastasized) to Plaintiff's bones and has continued to spread. There is no cure for this type of cancer, only treatment to alleviate pain, suffering, and slow the spread of the disease to extend Plaintiff's life expectancy. Plaintiff has multiple breakages/fractures/lesions and erosion of various bones. She has had several rounds of intense radiation to her hip and pelvic area that did not resolve all pain or cure-all fractures, soft tissue, and nerve damage. Over the last five years while living in RBA community, Plaintiff has relied on a wheelchair, crutch, cane, and walker, and at times, unable to walk due to exhaustion and severe pain from the hip bone pushing and breaking through the pelvic area. She has undergone a total hip replacement with pelvic reconstruction to allow her to stand, sit upright, and walk again. There was some improvement, but surgery did not go as planned. Plaintiff has a significant leg-length discrepancy that has caused a severe gait and posture damage to her spine, neck, and hip, along with multiple herniated disks and imbalance to the body. She must wear a thick shoe lift when walking or standing, and continues to have unpredictable limitations in walking, standing, bending, and sitting for any considerable amount of time. Her condition also causes her to have an imbalance and instability that causes her to sporadically fall with a continuing risk of falling.

10. In the last year, cancer has once again spread further into the Plaintiff's hip bone, pelvic bone and now to the rib bone as well. The Lesions cause painful fractures and unpredictable weakness and exhaustion from both the presence of cancer and dealing with constant pain. Once again, she has undergone multiple rounds of intense radiation to the hip, pelvic bone, and rib. She also had to have another surgery (total hysterectomy) in an attempt to slow the rapid spread of aggressive cancer. She continues to undergo various treatments, oral, intramuscular, physical therapy to spine and neck, and an extensive pain management.

11. Plaintiff is legally disabled with an illness that may end in her death. Her pain and fatigue come unexpectedly, recurrently and frequently strengthen, therefore from time to time, she can barely walk. Other times she can walk while pushing through the constant

3

pain. She is taken care of by a team of doctors at Baptist/Miami Cancer Institute (including primary, oncologist, radiologist, spine, orthopedic, gynecologist, and pain management team). All of these physicians help to manage her pain, treat the fractured and damaged bones, spine, administer continuous oral chemotherapy, and slow the further spread of cancer. These physicians prescribe numerous pain medications/supplements, therapies, and encourage the Plaintiff to continue her impressive determination to try and keep moving and overcome the predicted statistics of life expectancy of metastasized breast cancer. All physicians support and endorse her in the acquisition and use of a service dog for both physical and therapeutic assistance to continue the highest quality of enjoyment of life.

12. As stated above, Plaintiff is disabled as defined by 42 U.S.C. § 3602(h) and recognized as such by the U.S. government and her physicians.

13. RBA is a condominium residential community with two buildings (West and East) consisting of 164 unit in total. Condominium is located on a long parcel of land facing a large lake on its north side and parking spaces on the south side. It has a few small areas of grass on which unit owners can walk their dogs. One patch of grass is also located on the far west side and is abutting Condominium's west property line. This property is not RBA's property but is used by unit owners to walk their dogs. The other two grassy areas are located in the far east part of the RBA property.

14. RBA also has an area referred to as "Flower Garden" or "Green Garden" which is not a garden at all but rather large grassy area immediately adjacent to the Plaintiff's parking, Plaintiff's unit, and adjacent to the staircase exit/entrance Plaintiff frequently uses to get in and out of west building where her Unit in located. Flower Garden also contains a concrete platform with benches and a barbeque area. This area is designated as pet free area in the RBA Rules and Regulations.

15. On April 8, 2020 Plaintiff advised GILLILAND she obtained a service dog, Hungarian Vizsla, named Willow (hereinafter "Willow"), and that Willow will become a "resident" of RBA community in the next several days.

16. On April 11, 2020 and after Plaintiff received no response from GILLILAND, Plaintiff sent a second email providing GILLILAND with an update on Willow's inoculations status, together with Willows breed information and a Plaintiff's physician letter

4

advising she will be utilizing a service dog to assist her with Plaintiff's physical disabilities. (Copies of the 2 emails and physician's letter are attached hereto as an **Exhibit "A"**).

17. GILLILAND and other RBA board members were already made aware of Plaintiff's disability, by Plaintiff's conversations with GILLILAND and other board members over several occasions regarding Plaintiff's cancer, her treatment, time and physical constraint it imposed upon Plaintiff, her body , and her mobility.

18. Plaintiff realized that due to her disability, pain, and limitation in her ability to move it may sometimes be difficult to walk with Willow to the far west or east to the designated dog areas with dog stations.

19. Therefore, on April 11, 2020, Plaintiff has made a first request for a "reasonable accommodation" to be able to walk Willow, "from time to time", at a the "Flower Garden" immediately adjacent to Plaintiff's parking space and closest to the staircase Plaintiff uses to enter and exits the building. This area is also well lit in the evening/night hours and it has an even grass surface, making it safe to Plaintiff's walk. Plaintiff also forwarded copy of the last 2 emails to Oscar Borras (hereinafter "Borras") who is purported co-owner of RPM, who holds himself out as RPM's regional manager, LCAM, CAB, and direct superior of GILLILAND (Copies of these emails are attached hereto as an **Exhibit "B"**).

20. On April 13, GILLILAND confirmed the receipt of Plaintiff's emails and advised Plaintiff she will forward Plaintiff's requests to RBA board for review. (Copies of these emails are attached hereto as an **Exhibit "C"**).

21. On April 15, 2020 GILLILAND sent Plaintiff an email stating in part that "*We will need the deposit/fee as stipulated in the [RBA] Rules and regulations that are still in place.*" GILLILAND also cited the portions of RBA Rules and Regulations "*Per Section 3 – Rule H.: Certified Service Animal: ADA Certified Dog: $300.00 initial Deposit and $100 Yearly Fee:*" (Copy of this email is attached hereto as an **Exhibit "D"**)

22. GILLILAND also stated that "*In regards to your special request to have your Service Animal do it's necessities next to your car, that won't be possible. All pets including emotional and service animals have their designated area and the Green Garden is not one of them. The Board of*

*Directors feels that if an exception is made for one person, then they will have to make it for everyone else."* (Copy of this email is attached hereto as an **Exhibit "D"**)

23. On April 16, 2020 seeing that her request for reasonable accommodation was denied Plaintiff sent another email to GILLILAND, (copying Borras on this e-mail), sating among others that *"… perhaps the board did not understand that the accommodation, is for me, not the dog. The dog is not disabled, I am AND I will not be able to handle such distance to the "Dog Areas" all the time …"*(Copy of this email is attached hereto as an **Exhibit "E"**).

24. Plaintiff also asked that RBA and RPM familiarize themselves with the applicable Federal and State laws as it pertains to disabled persons. (See **Exhibit "E"**).

25. On April 21, 2020, knowing that RBA Rules and Regulations prohibits the charge of pet fees for service animals, Plaintiff, responded to GILLILAND's portion of an email requesting Plaintiff to pay pet deposit and annual fee related to Willow. Plaintiff has asked for and reiterated her "2nd reasonable accommodation" request for RBA to waive the deposit and annual pet fee as it was in violation of RBA'a Ruled and Regulations and applicable Federal and State laws. As of the date of this Complaint, GILLILAND never responded to this email. (Copy of this email and relevant copy of RBA Rules and Regulations[1] are attached hereto as an **Exhibit "F"**).

26. On April 23, 2020, GILLILAND (copying Borras on this e-mail) re-addressed Plaintiff's first reasonable accommodating request stating that *"the association has decided to try and accommodate [Plaintiff] by allowing the use of the rear common area directly outside of the 11 line."* GILLILAND also requested of Plaintiff not to "encroach onto barbeque area while walking [Willow]" (Copy of this email is attached hereto as an **Exhibit "G"**).

27. By limiting Plaintiff to walk with Willow to only "rear common area directly outside of the 11 line" GILLILAND and RBA restricted Plaintiff's movement to approximately 1,100 to 1,500 square feet of narrow rocky, uneven, and poorly lit area immediately adjacent to a very large lake. The lake is riddled with wild animals as it is connected to the ocean and the everglades by Snake Creek Canal. This area is divided by from RBA property by a sea wall without any railing or ladder that would allow for anyone to climb up in the case of fall into the lake.

---

[1] There RBA Rules and Regulations as to the Pet Fee required for assistance/service animals. Section H. offers the fee and deposit being waived upon showing of hardship. Section J. calls for waiver of any pet fees for assistant/service animals altogether. (See Exhibit "F")

6

28. It is clear and obvious to any person familiar with RBA property that the "rear areas of both RBA buildings" are scenic but also narrow, rocky, and the most dangerous part of the RBA property. Should any person or animal fall to the water it is virtually impossible to climb out absent of swimming hundreds of feet to the far east or west parking lots where the sea wall ends. The rear of the west RBA building is also riddled with iguana and water erosion created holes, it is poorly lit (or not lit at all) without any security cameras. The area is dangerous for anyone to walk, especially during darkness, it is especially dangerous for a person of Plaintiff's physical disability.

29. Stymied and in disbelief about GILLILAND's email, on the same date, April 23, 2020, Plaintiff responded (copying Borras on this e-mail) by asking GILLILAND "[w]hat does RBA mean by 'outside the 11 area [sic]?". Plaintiff also sought a confirmation whether "[she] is not allowed in the barbecue / common area with [her] dog?" As of the date of this First Amended Complaint, Plaintiff did not receive any response to her inquiry. (Copy of this email is attached hereto as an **Exhibit "H"**).

30. Despite the harsh "dog walking" restrictions placed upon Plaintiff by GILLILAND and RBA, Plaintiff started to use the "rear common area" without using the "green garden" where the barbecue area is located. Plaintiff started entering the rear of the building using the sliding doors located by the elevators in the middle of the building.

31. Few weeks into using the sliding door to access the rear of the building, Plaintiff noticed that someone placed large pots with trees and plants that practically blocked the ingress and egress from the building through the sliding doors.

32. Plaintiff also noticed that the sprinklers that irrigate the patches of grass in the rear of the building were changed to come on around 9-10 PM. (instead of the original post-midnight times – around 1-2 AM)

33. Together with the recently started concrete renovation of balconies causing fallen debris on the ground in the rear of the building, these changes made Plaintiff's ability to walk Willow even more difficult and dangerous.

34. On May 14, 2020 and with the rear of the building looking like a constructions site, Plaintiff sent her "third reasonable accommodation" request asking GILLILAND and RBA to 1. change back the sprinkler system timer schedule to its original post-midnight hours, 2. Move the heavy potted trees away from the sliding doors so Plaintiff can enter

and exit the building with ease, and 3. to pick up and clean up the debris in the grass as they pose danger to anyone using the rear of the building. (Copy of this email is attached hereto as an **Exhibit "I"**)

35. On May 15, 2020 GILLILAND responded stating that the owner of the concrete company had personally checked the work area but found no debris. GILLILAND addressed the request to move the heavy pots with trees as follows: *"… I asked Leandro not to move them because they belong to someone and I don't want those residents to say something to Leandro for moving them. They don't belong to the association."* (Copy of this email is attached hereto as an **Exhibit "J"**)

36. GILLILAND as the licensed representative of RPM and RBA personally decided to expressly deny Plaintiff's reasonable accommodation request to move the large potted trees that were and still are in the common areas of RBA property. (Copy of this email is attached hereto as an **Exhibit "K"**)

37. The same day at 7:29 PM Plaintiff responded to GILLILAND in part stating the *"sprinklers came on today at 6:00p.m. it's worse."* (See **Exhibit "K"**)

38. Plaintiff's request to change the sprinkler watering schedule back to the original after-midnight hours, to allow for Plaintiff to walk Willow without getting wet and dirty in the rear of the building, was met with no reply by any Defendant.

39. On May 16, 2020 Plaintiff sent one more email to GILLILAND explaining to her there is a scaffolding and sample of debris she picked up at 9AM that day. She also informed GILLLAND that she and another neighbor will attempt to pick up some of the debris. (See **Exhibit "K"**)

40. Never receiving a response to Plaintiff's request for waiver of pet fee (deposit and annual fee), Plaintiff paid under RBA's demand two checks in total amount of $400.00. GILLILAND acknowledged receipt of the same with a stamp and her initials (Copy of the two redacted checks is attached hereto as an **Exhibit "L"**)

## COUNT I – FAILURE TO REASONABLY ACCOMMODATE

41. Plaintiff repeats and realleges the allegation stated in paragraphs 1 through 40 above as though set forth herein.

42. RBA, RPM, GILLILAND and Borras acting as RBA's and RPM's agents and GILLILAND acting individually were all willing participants and acquiesced, and authorized all discriminatory acts towards Plaintiff and their denial of requested accommodations by Plaintiff.

43. Defendants RBA, RPM, and GILLILAND were all aware of Plaintiffs physical disability by virtue of their prior interaction with Plaintiff by her communications, and her written notices. The Plaintiff displayed her Florida handicap placard in her car window on numerous occasions and forwarded by e-mail one of the Plaintiff's physician letters dated January 22, 2020 to GILLILAND. (See **Exhibit "A"**).

44. All accommodations requested by Plaintiff were reasonable, as they would not impose any undue financial and/or administrative burden, and they would not fundamentally alter the nature of RBA's operations. All accommodations requested would in fact impose no or very nominal financial or administrative burdens upon RBA.

45. At no time did RBA, RPM or GILLILAND question or seek an additional information regarding Plaintiff's disability status, her need for a service dog, and the way Willow would assist Plaintiff, or Willow itself or explore any ways to accommodate Plaintiff.

46. At no time did Defendants, RBA, RPM or GILLILAND ask for any single additional document about her disability, Willow, or Plaintiff's need for reasonable accommodation.

47. Plaintiff has provided RBA, RPM and GILLILAND with all of Willow's paperwork including health-related and vaccination documents and Defendants accepted them as sufficient.

48. All reasonable accommodations requested by Plaintiff were clearly articulated via email and conversations and directed to GILLILAND as an agent for RPM and RBA. They were all particularly tailored for and based on Plaintiff's physical needs to obtain her enjoyment of RBA property and her enjoyment of RBA common elements. Plaintiff's requested reasonable accommodations were directed and carefully construed so Plaintiff had the opportunity to use and enjoy RBA common elements, grounds, and her dwelling.

49. Defendant GILLILAND individually, and as an agent for RBA and RPM either directly denied Plaintiff's reasonable requests (i.e. removal of pots with heavy trees and plants, denial of Plaintiff's use of grassy area next to Plaintiff's unit and her car; refusal to waive pet fee/deposit) or constructively denied them (i.e. failure to respond to Plaintiff's requests for changing sprinklers schedule of irrigation back to after midnight hours).

50. Upon Plaintiff's effort to point out and bring to the Defendants' attention the laws and federal regulations[2] and considering that GILLILAND and Borras are both Florida licensed community association managers (LCAM), It was the duty of RBA board of directors to know the standard FHA guidelines in light of the fact the fact that all of Defendants had an access and ability to consult legal professional(s) so that the denial of Plaintiff's reasonable accommodation requests were malicious, reckless, and intentional. Defendants completely disregarded Plaintiff's human rights, blatantly violated federal and state laws, and violated their very own RBA Rules and Regulations to purposely injure Plaintiff.

51. As a result of each Defendant's unlawful denial of reasonable accommodations, the Plaintiff has suffered irreparable loss, extreme emotional distress, physical distress, and harassment, and was deprived of her right of use and enjoyment of her dwelling and property rights.

52. As a result of each Defendant's unlawful denials or reasonable accommodations, Plaintiff is unable to enjoy the property rights and freedoms that are enjoyed by non-disabled residents.

WHEREFORE Plaintiff, DEBORAH ENGLE, demands judgment against each and every Defendant, ROYAL BAHAMIAN ASSOCIATION, INC.; RENOVATIONS PROPERTY MANAGEMENT, LLC, and PATRICIA GILLILAND and for the Court to declare that each and every Defendant violated the Fair Housing Act by unlawfully discriminating against Plaintiff, together with the award of compensatory damages, punitive damages as allowed by law, Plaintiff's attorney's fees and costs as prescribed by 42 U.S.C. § 3613(c)(2), together with an injunctive relief including the following:

---

[2] See Plaintiff's E-mail to Gilliland and Borras dated April 16, 2020 bringing their attention to ADA, FHA, HUD regulations and attached as an "Exhibit E" to Plaintiff's Complaint.
Also, See Plaintiff's Email to Gilliland dated April 21, 2020 pointing her attention to RBA Rules and Regulation as it applies to pet fees and deposits and attached as an "Exhibit E" to Plaintiff's Complaint.

10

A. That Defendants are ordered from any future discrimination against Plaintiff and any other third party person under the FHA.
B. That RBA is ordered to amend its Rules and Regulations in accordance with FHA rules and regulations specially to comply with applicable laws relating to service animals and reasonable accommodations.
C. That RBA is required to serve to all of its residents an educational pamphlet teaching them on the FHA rules and regulations as it applies to reasonable accommodations and anti-discrimination.
D. Any other relief this Honorable Court deems just and proper.

## COUNT II – RETALIATION IN VIOLATION OF 42 U.S.C. § 3617

53. Plaintiff repeats and realleges the allegation stated in paragraphs 1 through 40 above as though set forth herein.
54. Under 42 U.S.C. § 3617 "*It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, … in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.*"
55. When Plaintiff requested reasonable accommodation from RBA and was denied it; she was presented an unreasonable and dangerous alternative of walking on an uneven, poorly lit, dangerous ground in the rear of the building.
56. Plaintiff challenged RBA's denial of her reasonable accommodation requests but to no avail.
57. Plaintiff started to use the rear common elements from time to time in a fruitless attempt to try to enjoy her dwelling and all the common areas located in the rear of the building, as unlawfully directed by GILLILAND herself, and working on behalf of RBA and RPM.
58. After several weeks RBA had caused or allowed the placement of heavy pots with trees in the entry of the doorway Plaintiff used to enter and exit the rear common elements where she was directed to walk with Willow.
59. When Plaintiff asked to remove same, GILLILAND and RBA refused to do so.

60. RBA also caused or allowed the sprinkler irrigation system to become active during the times Plaintiff walked with Willow. Upon request to return the irrigation schedule back to after midnight, RBA and GILLILAND failed to address or respond.

61. RBA and GILLILAND increased retaliation against Plaintiff's when Plaintiff started being followed on RBA property by RBA board members and RBA violation committee member(s) who at times appear to be filming Plaintiff and her movement with Willow.

62. On May 22, 2020 during Plaintiff's loading Willow into the car, the irrigation sprinklers immediately adjacent to Plaintiff's car came on at 3:31PM spraying Plaintiff and Willow with irrigation water. Given the fact there is a security camera installed immediately on the building above Plaintiff's car and some RBA board members having access to the cameras live feed on their phones and other personal devices it is demonstrative that this was an intentional and coordinated act targeting Plaintiff and Willow.

63. In addition to the above stated retaliatory acts, **on or about September 18, 2020, after the June 19, 2020 filing date of this action, RBA and RPM further intensified their retaliation** against Plaintiff by recording a fraudulent Claim of Lien against Plaintiff's unit in the Official Records of Miami-Dade County, Florida thereby defaming Plaintiff and threatening Plaintiff with a foreclosure of her home.

64. The Claim of Lien was recorded on September 18, 2020 and consists of allegedly missed maintenance assessment payments, late fees, interest, "work order" charge, administrative fee, certified and regular mail charges, title and name searches, recording fees, and attorney fees. (Copy of the Claim of Lien is attached hereto as an **Exhibit "M"**).

65. As of the date of the Claim of Lien, Plaintiff was current on all her maintenance assessments, and as of the date of this First Amended Complaint Plaintiff still is current on all her maintenance assessments.

66. Plaintiff made timely payments directly to RBA's property manager GILLILAND, or to RPM at RPM's corporate address as RPM is authorized to accept RBA maintenance payments from RBA unit owners. However, RPM had intentionally mishandled Plaintiff's payments by applying them untimely, intentionally generating late fees or not applying them to Plaintiff's ledger at all in retaliation for Plaintiff bringing this action.

67. As reflected in a ledger provided by RBA's attorney David Iglesias (hereinafter "IGLESIAS") on September 18, 2020, RPM and RBA intentionally failed to credit Plaintiff, February 2020, mishandled June 2020 payment, that Plaintiff subsequently replaced with new payment and a late fee payment (paid under protest), delayed the application of September 2020 payment, and reflected several other payments received as late despite Plaintiff having proof maintenance payments were delivered to RPM timely. (Copy of the Plaintiff's Ledger as provided by IGLESIAS as an **Exhibit "N"**)

68. Additionally, in its Claim of Lien, RBA included a non-foreclosable, and non-lienable "work order charge" of $1,975.00[3].

69. From records available to RBA, RPM, Iglesias, and Plaintiff, it is clear that this "work order charge" is entirely the responsibility of RBA, yet the Defendants placed this charge willfully in the Claim of Lien encumbering Plaintiff's unit in further retaliation.

70. RBA's false Claim of Lien and its fraudulent charges are RBA and RPM's unlawful attempt to falsely encumber Plaintiff's unit for pre-foreclosure purposes in further retaliation against Plaintiff which was approved by RBA's attorney Iglesias.

71. RBA, its legal representative Iglesias, and RPM are well aware that the only Florida condominium charges that are lienable and foreclosable are unpaid maintenance assessments and special assessments. In addition, RBA is only entitled to collect late fees, attorney fees, cost and mailing cost related to the Claim of Lien incurred for the collection of unpaid maintenance assessments and special assessments.

72. Plaintiff is current on all her maintenance assessments and no special assessments are due. RBA and RPM with the assistance of Iglesias, intentionally and fradulently created a fraudulent Claim of Lien, inflated the same with fraudulent late fees caused by misapplied Plaintiff's payments, attorney fees, false administrative fee, "work order charge" and other illegally added fees and charges intended to intimidate Plaintiff, causing her to incur more attorney fees, court cost, and thereby commit willful retaliation against Plaintiff.

---

[3] This charge was a result of a work order resulting from an RBA's duly noticed board of directors meeting on September 5, 2018. It was one of several jobs RBA performed for unit owners who became victims of floods and had damaged drywalls in their unit. This charge was entirely to be born by RBA as Plaintiff's unit was damaged by flood from above unit.

13

73. Not spending their own money on legal fees, RBA board members with the assistance from RPM and Iglesias, have little interest in following Florida established condominium collections laws. The purpose of their efforts is to thwart Plaintiff's quality of life, to harass her, retaliate against her, and cause her to move out along with her service dog , Willow.

74. GILLILAND and Borras are Florida licensed property managers who work for the RBA and RPM and they each are expected to know the FHA and its guidelines and have access and ability to consult legal professionals regarding the issues in this lawsuit, so that their above listed conduct is malicious, willful, and intentional retaliation against Plaintiff.

75. As a result of RBA and RPM's malicious retaliation, Plaintiff has suffered an irreparable loss, extreme emotional and physical distress, and harassment. Plaintiff was and still is being prevented from exercising and deprived of her right of use and enjoyment of her dwelling and property rights, which the Defendants gladly afford able bodied and healthy people on the RBA property.

WHEREFORE Plaintiff, DEBORAH ENGLE, demands judgment against each and every Defendant, ROYAL BAHAMIAN ASSOCIATION, INC.; RENOVATIONS PROPERTY MANAGEMENT, LLC, and PATRICIA GILLILAND and for the Court to declare that each and every Defendant violated Fair Housing Act by unlawfully discriminating and retaliating against Plaintiff, together with the award of compensatory damages, punitive damages as allowed by law, Plaintiff's attorney's fees and costs as prescribed by 42 U.S.C. § 3613(c)(2), together with an injunctive relief including the following:

A. That Defendants are ordered from any future discrimination and retaliation against Plaintiff and any other third party and person under the FHA.

B. That RBA is ordered to amend its Rules and Regulations in accordance with FHA rules and regulations especially as it applies to service and assistance animals and improper retaliation against residents.

C. That RBA is required to mail to all of its residents an educational pamphlet teaching them on the FHA rules and regulations as it applies to reasonable accommodations, anti-discrimination, and anti-retaliation.

D. Any other relief this Honorable Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

By: /s/ Gregory M. Ochalek, J.D.
FBN 659703

Respectfully submitted and Dated this **18th** day of **December 2020**

_____
S/ Gregory M. Ochalek, J.D. FBN 659703
19553 NW 2nd Avenue, #217
Miami FL 33169
(T) 305.329.4590 (F) 305.329.4591
ochaleklaw@gmail.com (Designated E-mail)

15